[No. 21060.    Department One.—August 2, 1894.]

THE PEOPLE, RESPONDENT, v. M. D. HAMILTON, APPELLANT.

COUNTY CLERK—FEE BILL OF SAN DIEGO COUNTY—CONSTITUTIONAL LAW —STATUTE IN FORCE.—The fee bill of 1876, applicable to the county of San Diego so far as it provided for the fees to be paid to the clerk of the district court, and the deposit to be made with him at the commencement of each suit therein, etc., was a law relating to the judicial system of the state, and was not only kept in force by the constitution of 1879, but was made applicable to the courts organized thereunder by section 11 of article XXII of the constitution.

ID.—DEPOSITS WITH CLERK IN HIS OFFICIAL CAPACITY—PAYMENT TO CUSTODIAN.—Deposits received by the clerk in his official capacity and under color of his office, if not used in the payment of fees accruing in the cases in which they were deposited, or demanded by the depositors, should be paid over by the clerk to the proper custodian.

ID.—CRIMINAL LAW—OMISSION OF CLERK TO PAY MONEYS TO SUCCESSOR. Prior to January 5, 1891, there was no law making it the duty of the county clerk of San Diego county to pay over any public moneys in his hands, or any fees deposited with him, to his successor in office, and he cannot be prosecuted under section 424 of the Penal Code for the crime of omitting and refusing to pay over to his successor any public money alleged to have been received by him in his official capacity as county clerk.

ID.—FAILURE TO PAY MONEY TO COUNTY TREASURER.—Under an information charging a county clerk with omission and refusal to pay over moneys to his successor, he cannot be convicted for failure to pay the moneys to the county treasurer.

ID.—RES ADJUDICATA—LAW OF THE CASE.—A ruling by the appellate court upon a point distinctly made upon a previous appeal is, in all subsequent proceedings in the same case, a final adjudication, from the consequences

of which the court cannot depart, nor the parties relieve themselves; but this rule does not apply to points not made or passed upon on the former appeal, nor to new points upon the second appeal, nor to questions of fact.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion.

*Eugene Daney, J. L. Copeland,* and *E. W. Hendrick,* for Appellant.

*Attorney General W. H. H. Hart, Deputy Attorney General William H. Layson,* and *M. L. Ward,* for Respondent.

SEARLS, C.—The defendant, M. D. Hamilton, was county clerk of the county of San Diego for two years next prior to January 5, 1891, when his term of office expired, and he was succeeded in said office by one W. M. Gassaway.

He was informed against by the district attorney under section 424 of the Penal Code for the crime of omitting and refusing to pay over to his successor, the said Gassaway, county clerk, upon demand, the sum of four thousand four hundred and twenty-two dollars and thirty-six cents, public money alleged to have been received by him in his official capacity as county clerk, etc.

Defendant entered a plea of not guilty to the information, and upon a trial was convicted and sentenced to two years' confinement in the state prison at San Quentin.

At the proper time he moved for a new trial, which was denied, and this appeal is prosecuted from the judgment and from the order denying a new trial.

Section 424 of the Penal Code, upon which the prosecution is based, so far as applicable to the case in hand, is as follows:

" Each officer of this state, or of any county, town, or

district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either . . . . 9. Willfully omits to transfer the same when such transfer is required by law; or 10. Willfully omits or refuses to pay over to any officer or person, authorized by law to receive the same, any money received by him under any duty imposed by law so to pay over the same, is punishable by imprisonment in the state prison not less than one nor more than ten years, and is disqualified from holding any office in this state."

The contention of counsel for appellant is that the verdict is contrary to law and evidence. Their position may be epitomized thus: 1. The money in question was not public money; 2. There was and is no law requiring a county clerk, upon the expiration of his term of office, to transfer to his successor in office public money in his hands; 3. The successor in office of defendant was not authorized by law to receive the money in question, and there was no duty imposed by law upon defendant to pay over to his successor such money.

It appears that the money which it is alleged the defendant failed to account for to his successor in the office of county clerk was received by said defendant, while county clerk, as deposits from litigants to cover anticipated costs in cases pending in the superior court of the county of San Diego, and it is contended there was not at that time any law which authorized the defendant, as county clerk, to demand or receive such deposits, and, therefore, being illegally collected, no duty devolved upon him under the law to pay the same to his successor in office; that such money belonged to litigants, and should have been returned to them, or if received under color of office and not claimed by such litigants, it should have been paid to the county treasurer.

On March 31, 1876, a fee bill was passed by the legislature for the county of San Diego. (Stats. 1875–76, p. 586.)

By section 3 of that act the clerk of the district court was authorized to demand and receive from the plaintiff in each case at the commencement of an action a sum of not exceeding ten dollars to cover costs, and from the defendant the sum of three dollars, etc. The statute then provided as follows:

"Any excess of fees advanced by either party, on the determination of the action, shall be returned by the clerk to the party who advanced them, on demand."

It seems to be conceded that under the County Government Act of 1885, as amended, up to 1889, and during the period of defendant's incumbency of the office of county clerk, viz., from January, 1889, to January, 1891, the county of San Diego was a county of the thirty-first class.

The amendments of March 16, 1889, to the County Government Act fixed the salary of the county clerk and of other officers in counties of the thirty-first class, but made no provision as to the fees to be collected, and did not provide for a deposit to cover fees except in three classes of counties, of which the thirty-first is not one. (Stats. 1889, p. 232.)

There was nothing in the County Government Act up to 1891 which repealed or was inconsistent with the fee bill of 1876 (Stats. 1875–76, p. 586), and our attention is not called to any other statute bearing upon the question.

The county clerks were *ex officio* clerks of the district court in their respective counties under our former constitution, and under the constitution of 1879 the county clerks are *ex officio* clerks of the courts of record in and for their respective counties. (Const. of 1879, art. VI, sec. 14.)

Article XXII also provides that all laws in force at the adoption of the constitution, not inconsistent therewith, shall remain in force until altered or repealed; and section 11 of the same article provides as follows:

"All laws relative to the present judicial system of this state shall be applicable to the judicial system

created by this constitution until changed by legislature."

The fee bill of 1876 applicable to the county of San Diego, so far as it provided for the fees to be paid to the clerk of the district court and the deposit to be made with him at the commencement of each suit therein, etc., was a law relating to the judicial system of the state, and was not only kept in force by the constitution of 1879, but made applicable to the courts organized thereunder.

The conclusion is therefore reached that the defendant, as county clerk of the county of San Diego, was authorized, under the act of March 31, 1876, to demand and receive the deposits in question for the purposes, and subject to the disposition, therein and by law provided.

We are also of opinion the deposits were received by the clerk in his official capacity, and under color of his office, as clerk of the superior court, and, if not used in the payment of fees accruing in the cases in which it was deposited, or demanded by the depositors, should have been paid over by defendant to its proper custodian.

In *People* v. *Van Ness*, 79 Cal. 85, 12 Am. St. Rep. 134; it appeared that the defendant, as commissioner of immigration for the port of San Francisco, had, under color of his office, illegally collected certain fees for administering oaths to ship captains, for which there was no authority of law, and this court held that "the money, having been collected under color of office, should have been paid into the state treasury, and did not belong, in any view, to Van Ness, and he had no right to retain it. . . . . It really belonged to the shipmasters of whom it was collected; but the state, in whose name and by whose authority it was pretended to have been collected, was the proper custodian of such moneys."

The next question involved relates to the duty of the defendant to turn over to his *successor in office* the money in question.

The *gravamen* of the charge in the information is, that it was the duty of the defendant, imposed by law, to transfer the money in question to his successor in office; that he willfully, fraudulently, and feloniously neglected and refused to transfer or pay the same to his successor, etc.

We have searched in vain for any law making it the duty of the defendant to pay over public moneys in his hands to his successor in office.

Section 16 of article XI of the constitution makes it the duty of officers to deposit with the county treasurer, to the credit of the county, all moneys, assessments, and taxes belonging to or collected for the county. (*Yarnell v. City of Los Angeles*, 87 Cal. 603.)

Section 70 of the County Government Act provides that the county treasurer "must receive all moneys belonging to the county, and all other moneys by law directed to be paid to him, safely keep the same," etc.

Section 212 of the same act provides that "all salaried officers of the several counties of this state shall charge and collect, for the use of their respective counties, and pay into the county treasury on the first Monday in each month, the fees now or hereafter allowed by law in all cases, except the percentage hereinbefore allowed such officers, and excepting, also, such fees as are a charge against the county."

The county clerk of San Diego county was a salaried officer, and received no fees to his own use. Section 214 of the same act provided for a statement and affidavit upon payment to the treasurer.

Under section 1014 of the Political Code it becomes the duty of the county clerk, in common with other public officers, to surrender and deliver to his successor the possession of all books and papers pertaining to his office, or in his custody by virtue of his office.

And if he willfully and unlawfully withholds any records, papers, documents, or other writings from his successor in office, he is, under section 76 of the Penal Code, guilty of a felony.

The clerk is not a financial custodian of public moneys, except as to fees, etc., collected or received by him to the use of the county, and for which it is his duty to account with the treasurer on the first Monday of each month.

No statute is pointed out or suggested under which it is made his duty at any time or under any circumstances to pay over public money in his hands to his successor in office.

The most that can be said is that the law ought to have provided, in cases like the present, for paying to the successor in the office of county clerk such sums of money placed on deposit as security for fees as have not been exhausted in payment for services rendered; but the answer is, that, however desirable, there was no such law up to the date of the expiration of defendant's term of office, viz., January 5, 1891.

The amendments to the County Government Act since the last-named date, and which, in many of the counties at least, provide for or obviate the difficulties of the present case, need not concern us at present.

It follows that defendant's successor in the office of county clerk was not the custodian of the moneys alleged to have been collected by the defendant as aforesaid during his term of office, and to neglect or refuse to pay to him the moneys in question constituted no violation of law, and the motion of counsel for defendant to advise an acquittal should have been granted, and as the court refused, at the request of defendant, to charge the jury that there was no law requiring the defendant to turn over to his successor in office the money in question, and as it did instruct that "the county clerk was the legal custodian of such funds, and the defendant, as such county clerk, was bound by law to pay over the same to his successor, and the latter was and is entitled to demand and receive the same," the verdict is against law and evidence.

Defendant could not, under the information, be convicted for a failure to pay these moneys to the county

treasurer for the reasons: 1. He was not charged in the information with any neglect or refusal so to do; 2. There is no evidence of any such refusal, but, on the contrary, there is some uncontradicted evidence in the record that the county treasurer refused to receive such money on the ground that the fees had not been earned and did not belong to the county.

The court below, on motion of defendant, arrested the judgment in this case, whereupon an appeal was taken to this court, and the action of the court below was reversed. The case is not reported, but may be found in 32 Pac. Rep. 526.

It is claimed by counsel for the people that the very question presented here was involved in that appeal, and that as the court held the information sufficient, it became and is the law of the case, and even if " wrong becomes *res adjudicata* and final."

I do not so understand the ruling. The opinion in that case, after referring to the objections made to the information and commenting upon them, uses the following language:

" Respondent further contends that, if the facts hereinbefore referred to were insufficiently pleaded, still the information does not state sufficient facts, because there was no law authorizing the clerk to receive deposits from litigants, and that, therefore, deposits received by him were illegally collected, and belonged to the depositors. But this question is not before us. This appeal involves only the sufficiency of the information and the jurisdiction of the court, while this contention assumes facts which may have been given in evidence, but which could not properly be considered upon this appeal if they were. The allegation that defendant received these moneys in his official capacity was sufficient, without referring, by title or otherwise, either to the statute under which the information was drawn, or to any statute which created a right, duty, or obligation, the antecedent existence of which may constitute a factor more or less intimately connected with the offense. As

to all these the general conclusion of the information, ' *contra formam statuti* ' is sufficient."

If the legality of the deposits with defendant was not in question, by parity of reasoning, the legality of the demand and refusal to pay over the deposits by defendant to his successor was not involved; besides, that question was not, so far às appears from the opinion, either raised or decided.

It is not doubted but that a ruling by the appellate court upon a point distinctly made upon a previous appeal is in all subsequent proceedings in the same case a final adjudication, from the consequences of which the court cannot depart, nor the parties relieve themselves. (*Phelan* v. *San Francisco*, 20 Cal. 40; *Davidson* v. *Dallas*, 15 Cal. 75.) But this rule does not apply to points not made or passed upon on the former appeal (*Anderson* v. *Hancock*, 64 Cal. 455), or to new points presented on a second appeal (*Ehrlich* v. *Ewald*, 66 Cal. 98), or to questions of fact. (*Mitchell* v. *Davis*, 23 Cal. 381; *Sneed* v. *Osborn*, 25 Cal. 629.)

It follows that the points made here are not concluded by the decision on the former appeal.

The judgment and order appealed from should be reversed, and as no conviction can be had under the information, the court below should be directed to dismiss the cause.

Vanclief, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and the court below directed to dismiss the cause.

Van Fleet, J., Garoutte, J., Harrison, J.